I'm George May and I represent Sherry Buescher, who it is universally acknowledged is not the debtor of First United Bank. Mr. Larry Vick is here representing the co-appellant Dean Buescher, my client's husband, who is a debtor of First United. Your Honors, the question for Mrs. Buescher that the Court should first address is a question of First United's standing. It's acknowledged and agreed that Mrs. Buescher, Sherry Buescher, is not the debtor of First United, yet First United claims to have standing to deny her her discharge in bankruptcy. Yes, Your Honor. All right, now, what does that add to their case by making her a party to the dischargeability? Because they already, I mean, as I understand, the basis for it is community property. But they already have a right to come against that community property without asking for her dischargeability, correct? Precisely, Your Honor. The joint community property is always available to the creditor under Texas law of one spouse. If she should get a divorce, say, from her husband and start again, that non-dischargeability is going to follow her to all the new money that she makes outside the community property. That is precisely correct, Your Honor, and this Court has held exactly that in R.E. Vassling in 1986 when the Court stated only those creditors who have claims that will be affected by the discharge can file objections. Under that rubric and what Your Honor just stated, First United does not have standing to challenge Mrs. Buescher. She has standing to come after her property, though. It's held in community property. Absolutely, if it's jointly managed community property, yes. But as First United States, her sole management of community property, they are not seeking and have never seeking and have no right. That's on page 14 of First United's brief. Have no right to what? Have no right to her? Her sole managed community property. That's her wages. Well, you're saying, well, then it does add something. You're saying that getting her non-dischargeability does add something to their quiver of collectability. No, Your Honor. They are seeking absolutely nothing and have no claims against Mrs. Buescher except for joint community property under Texas law. And they state as much in their brief. I thought you were saying that they weren't entitled to it under joint community law. Under joint community law, they are. And her discharge would not affect First United Bank's right to go get the joint property, which is the property of both spouses. Right. He owns it. It's his. That's how they get at it. They don't have to go through her to get it. The First United Bank attempts to get at Mrs. Buescher, get standing in Mrs. Buescher, by conflating joint community property with a community claim under the bankruptcy code. That doesn't work because the touchstone of a claim, as this Court held in Calabresi v. Jobs in 2004, the touchstone of a claim is that there is an enforceable obligation of the debtor. Here, there's no obligation of Mrs. Buescher. Some of her property that her husband owns in joint management with her is liable, but she is not. Going on, the Court said, or an enforceable right. What is this, these words, in joint management, add or detract from community property? There are five estates for a married couple in Texas under Texas law. First, there's the joint management estate, the joint assets of the marriage, that are owned by both spouses and available to creditors of both spouses. All property accumulated during a marriage is presumed to be in that grouping. In this case, in the bankruptcy court, there was no property that my client claimed as her separate estate or her solely managed estate. So there is no property of hers that is not available to the creditor of her husband. That's all I need to know. Thank you, Your Honor. About that. Well, no, I didn't mean to stop you all. I just said about that. If you've got something, well, I mean, if you haven't got anything else to say, I mean, I don't think you're great. I do, Your Honor. Although I don't think First United gets past the standing issue, in case they do, and in buttress of Mr. Vick's argument on behalf of my client's husband, Dean Boucher, the bankruptcy court found under 727 that Mr. Boucher and Mrs. Boucher, for that matter, discharges should be disallowed. But they relied upon a, the bankruptcy court relied upon the wrong standard. The bankruptcy court held both of the Bouchers to a strict liability to conform and have accurate schedules and accurate statements of affairs. When the standard should be liberally construed in favor of and the burden of the debtor, and the burden should be on the creditor seeking denial of discharge. That is demonstrated on the memorandum opinion of the bankruptcy court on pages 10 and 11, where the bankruptcy court discusses that a discharge in bankruptcy is a privilege, not a right. It is the burden of First United to show that on the keeping of records, that there was a failure to keep records that were adequate for First United to be able to determine the financial position of the debtors. What First United complains about and what the bankruptcy court complains about is what was in the schedules, what wasn't in the schedules, what was produced to the trustee, and what was not. First United never sought any production. What the burden of First United is as to Mr. Boucher and Mrs. Boucher for the failure to keep records is to show that records weren't kept. Not that they weren't produced. Not that the financial statements and the schedules don't accurately show what the records would show. It's cutting it pretty thin. Sorry, Your Honor? It's cutting it pretty thin. It is, Your Honor, but the standard that the bankruptcy court failed to apply was liberally construed in favor of the debtor. I've kept all the records, but I'm not going to give them to you and you can't see them. And I'm going to hide them, but I kept them. I mean, that's, you know, that doesn't sound like a home run to me. I thought they said they didn't keep records. There was one instance in a deposition of Mr. Boucher where he said he did not have personal financial records. But if the entire deposition is read— In other words, didn't have, meaning never kept them. Correct, Your Honor. They never existed and he threw them away. They never existed. That he did not keep a systematic record of his personal— But keep doesn't mean I had it and I threw it away. That is correct, Your Honor. It also doesn't mean that I can't go and get it from third parties. The trustee requests— We don't. Your Honor? I wouldn't pick up that inference. Thank you, Your Honor. I shall not either, then. The trustee requested documents. The trustee did not object to the discharge. First United never requested a document and objects to the discharge. The question on that element, especially for Mr. Boucher, is whether or not First United can meet its burden to prove that records were not kept or were secreted or destroyed on solely the trustee who did not object to the discharge and did not complain. Your client made these representations to the bankruptcy court the same as Mr. Boucher? That is, we kept the records but didn't keep them or whatever defense— No, Your Honor. Those representations were made by Mr. Boucher. Are you making his argument? I am, Your Honor, but I have time before the court, even though I have a yellow light, so I wanted to, in case we get past the standing on Mrs. Boucher, make that argument and Mr. Vick will make those arguments for Mr. Boucher. Okay. Thank you, sir. Mr. Vick? Thank you, Your Honors. May it please the court. As the court is aware, Mr. Boucher's discharge was denied based on a summary judgment, and it is our position that the requirement that the plaintiff had to bring forward, the proof, was not met. That, in fact, the court, the bankruptcy court, placed a burden on Mr. Boucher to prove that he had produced all of the records. Well, why didn't he have that obligation? He has the obligation once the burden shifts, but he— He put on the evidence that he didn't give them to the trustee, right? He presented them to the trustee. He may have been tardy in doing that, but through my years of bankruptcy practice, I have seen many times where my clients produce tardy records, and that does not create an issue where there is a violation or a presumed violation of 727A3. The bank did not do any discovery other than one deposition. The entire case seems to revolve around and around on Mr. Boucher's statement, I don't keep personal records. That was later explained as an offhand statement that either he didn't understand or that he was thinking of other things that the plaintiff did not mean when the question was asked. Even the bank itself stated in its brief that— I'm sorry? Your bankruptcy court, the bankruptcy court discredited your client. Is that true? I think from the very beginning. All right. It sounds—why was he not entitled to do so? I'm sorry, I'm a little— Why was he not entitled to do so since, you know, you're making all of these statements that you're retracting, and you say nobody understands quite what they mean, and I'm putting a little color on it here and a little color on it there in rebuttal? I mean— Because even after the hearing on the motion for summary judgment, the debtor was producing records showing that the allegations of the bank was not true. He produced additional bank statements— What allegations of the bank were not true? Pardon? What allegations of the bank were not true? That the debtor had not preserved records. Or had the debtor hidden some property? I thought he had hidden property like some storage facilities or something like that. There was that finding that there was storage facility that was not disclosed in the statements and schedules. All right. So, I mean, why isn't that alone enough to justify nondischargeability? Not as far as records are concerned. Well, I know, but it's an independent ground. So can't you forget the records? Couldn't the bankruptcy court forget the records and rely on the fact that you had hidden assets and failed to disclose assets as a ground for nondischargeability? It could be in a summary judgment that— Well, because it is our position that the case should have gone to trial and Mr. Brashear should have been given an opportunity to present evidence. What was he going to say about hiding his assets? That those assets were not his. No, his total assets weren't, but, I mean, the assets that he did hide, what was he going to say about the storage facilities and all? He would have come forward and said that those belonged, as later it was shown, that they belonged to family members and to a friend. I see. That opportunity to bring forward the witnesses was not given Mr. Brashear, and primarily that's our position that the summary judgment was inappropriate. Mr. Brashear should have been given the opportunity to bring forward the evidence showing that he had delivered documents, his attorney delivered documents to the trustee, that the trustee apparently lost some of the bank statements, that as far as failing to maintain personal business records, that he did provide a significant number of bank statements, that he presented documents showing these transfers that occurred within one year. Was all of this evidence before the bankruptcy judge at the time that he ruled on the summary judgment? Yes, sir. It was after the hearing, but it was presented as evidence in the motion. It was the response that the debtor made for reconsideration. I'm sorry, it was made for the reconsideration of order granting summary judgment. That evidence was presented at that time. A little late. Much of the evidence that came forward, Your Honor, in fact did show that there were records, and those records were kept, and the only thing that the plaintiff did was to rely upon the trustee, the affidavit of the trustee, and a statement that Mr. Brashear unfortunately made that he didn't keep personal business records, personal records. This Court has never delineated, as far as I can determine, what the threshold of documents must be preserved to not violate 727A3. How many records do you have to have? Must those records be all of your bank records? Must they be all of your transfers? Or should they be records sufficient, as 727 says, to give an opportunity to the plaintiff to determine the circumstances of the debtor's finances? The plaintiff did not seek to do that. The plaintiff did not seek to determine the circumstances based on the records that it could have obtained. It is our position that the plaintiff failed in presenting its evidence and that the facts mixed with the law showed a clear abuse of the law because there was enough evidence before the Court to have put the case to trial. Okay, Mr. Vick. Thank you very much. Thank you. Boyd, we'll hear from you. First United Bank and Trust. May I please the Court? Larry Boyd, representing First United Bank and Trust. Your Honor, I'd like to address Mr. Buescher's arguments first. The bank moved for summary judgment against Mr. Buescher under 727A2, A3, A4, and A5. The Court ultimately granted the summary judgment under 727A3, which is the failure to preserve records. In his response to the briefing in this Court, Mr. Buescher . . . or excuse me, the bank raised the dischargeability issues again as to 727A2 and A4. Mr. Buescher filed no reply brief. So therefore, it's the position of the bank that under a de novo review, the Court may grant the summary judgment under 727A2 or A4, as well as affirm the summary judgment under 727A3. The case that Mr. Buescher's attorney seeks to make is that he produced records. In fact, he did not produce records. When we filed the motion for summary judgment, we took the records we had received from Mr. Buescher in deposition, which we had asked for bank statements, we had asked for tax returns, we had asked for other personal documents that would have reflected his financial position, so that we could, in fact, analyze those. His response on multiple occasions in the deposition was, I don't keep bank records. I don't keep these kinds of records that you're asking for. I asked him where they were, and his answer to me was, they're at the bank. And I said, well, why don't you have them, or why can't you get copies? Ultimately, the excuse was, that costs too much money and I can't afford it, but you or the trustee can go get them if you want. But that . . . Was the bank, like, was the reference to banks, monthly bank statements, or to loans, or to notes, or . . . Primarily to bank statements, because we were interested in the bank statements to see . . . You're the bank, right? I'm sorry? You're the bank. But these are other banks. These are banks that we had no contact with. There were numerous banks. I think there were six or seven other banks which Mr. Buescher maintained accounts, where he maintained accounts, or where his wife maintained accounts. Now, those were also the records that the trustee continuously asked for. The trustee asked for those on three separate occasions and didn't receive them. Now, ultimately, we got some of them during Mrs. Buescher's trial. They were produced at trial. And we can talk about that at a later date, but they ultimately showed that the Bueschers had taken over $200,000 and paid debts for their company for which they were not personally liable. It was a preference, and it deprived the trustee of an ability to pursue the preference because he could never find out about it. But even so, what was the proof at the summary judgment stage? Mr. Buescher's deposition, a comparison which was made in the summary judgment documents of his financial statements to his schedules, and the incomplete records that he responded to the summary judgment with and to which he responded to the trustee. The trustee filed affidavits in support of FUB's motion and indicated in those affidavits what he had not received and what he had requested. Now, the question presented squarely was, if he had assets that were reflected on his financial statements and now he does not have them, where did they go? And if they were sold, where did the money go? Those questions were never answered. That was the prima facie case. At that point, the burden shifted to Mr. Buescher to demonstrate a justification for his failure to produce records. Obviously, the court had to consider his education, his experience, his sophistication, the complexity of his business, the volume of his business, and it did consider all of those things. However, 727A3 does not require the bank to show fraud. It simply requires the bank to show that the records have never been made available. In this case, both defendants failed and refused to maintain and or produce records. And as the court knows, complete disclosure in every case is a condition precedent to the grant of a discharge. And that just didn't happen here. The bank statements which were produced contained no detail. All they had were numbers. There was no backup information whatsoever. We could not tell what the distributions were for or to whom they went. In his response to the motion for summary judgment, Mr. Buescher, as later did his wife, argued that they had given those records to their attorney and the attorney had failed to give them to the trustee. However, notably, there was no supporting documentation of that fact from their attorney. As a result, there simply wasn't a scintilla of evidence to support their defense to the 727A3 argument. And the numbers we're talking about are significant. For instance, there were car sales that totaled over $255,000. There was over $700,000 withdrawn from an IRA account. There was a sale of a $1.5 million lake house that netted $219,645. There was a sale of insurance company stock for $41,665. And there was $1,150,000 of other investments shown on the financial statements that were never located. In essence, we were trying to find $2,366,310 and were totally unsuccessful because we had no records with which we could trace any deposits of those funds. And what was the loan, $19 million? About $20 million, Your Honor. Now, through the foreclosure process in the northern district, we had the stays lifted, and we were able to get some of that property back and sold it. The ultimate deficiency was right at $3 million, but the total loan was about $20 million. Now, so Mr. Buescher did not respond adequately. When he did file his motion for reconsideration, and as the court noted, albeit a little bit late, he attached records which were all unauthenticated. He did not verify any of the records that were attached to the motion for reconsideration. There was just simply no basis for the court to even consider those. However, what they did show us was that there were bank accounts that we didn't even know existed in his wife's maiden name of Sherry Warren, and that she had $190,000 on deposit prior to bankruptcy, which was never on their schedules and never accounted for, and we to this day don't know where it went. Maybe it was separate property before they got married. Well, Your Honor, we don't know that because she didn't list it, so her schedules never disclosed it. So we have no idea if it was separate property or sole management community or jointly managed community. We just simply do not know. Now, the purpose of 727A3 is to force the debtor to produce dependable records, and as the court knows, a discharge in bankruptcy is not a right, it is a privilege, and the debtor is charged with the obligation of producing records under 727A3 from which their financial condition may be ascertained. That simply did not occur in this case. I'd like to shift for a moment to Mrs. Buescher. The argument that has been advanced by Mr. May with regard to Mrs. Buescher deals with standing, and I think the standing argument really has no merit. First of all, the question is did the bank have a community claim? A community claim is defined by the Bankruptcy Code in 101— Start off with the fact that she was not a party to the loan, right? Your Honor, she was not a debtor on the document. She was not a guarantor of the instrument. She didn't sign it. She did not sign anything. She owed you no obligations under that document. That's correct, Your Honor. Now— You have standing to sue her. Yes, sir, and the reason we did is because the bank, it was the holder of a community claim, and that term is defined under 1017 of the Bankruptcy Code, and basically if the debtor has property that is property of the state under 541A— What does that add to you? That's what I don't know, and I'm asking because I don't know. What does it add to your ability to collect the debt to oppose her dischargeability? Well, Your Honor, the ability to collect on the debt because we don't know what all the community property interests are, so we are— What difference does that make? I mean you're going to find out one way or the other, and when you do find out whatever her interest in it, it doesn't matter. I mean whether you've got a dischargeability against her doesn't matter. Yes, sir, it does. Okay, tell me how. Well, the reason it does, Your Honor, is because we believe that there were attempts to take jointly owned property and secrete it through Mrs. Busher. The $190,000 is an example. We weren't able to ascertain what the character of that property was, but notwithstanding that, because we own a community claim— You still don't know. No, sir, we don't know. You just admitted you didn't know whether it was community property or not. That is correct, Your Honor. We were enabling— That doesn't—I mean to me that doesn't advance your claim against her. Well, Your Honor, it's a claim because it's a community claim, and as a holder of a community claimant, we are a creditor of her estate. No, to her community estate. No, sir, to her bankruptcy estate. Oh, to her—did she file bankruptcy? Yes, sir. She's a joint debtor. But she doesn't owe the bank anything. She did not owe the bank anything in terms of being a guarantor. So what we did was we pursued her community property interest under 541A as a joint debtor in the bankruptcy code, under the bankruptcy code. Now— Let's just talk about the other creditors are not involved in this. No, sir. This is just between you and her and her husband. That's correct. And you have got—you have made his situation non-dischargeable. Yes, sir. So you can go against him and all of the community property. That's correct. All right. And that she has a stake in as well. But you can't go against her own individual personal property for— We cannot go against her sole management property nor her separate property. All right. Now— So why do you want a judgment in bankruptcy? What would happen if she got a divorce from her husband? Well, at this juncture, Your Honor, she would still be bound by the judgments that have already been rendered against her, both in state court as well as in the bankruptcy court. Well, I know, but she would not be—she would—if she got a dischargeability. Well— If she got discharged, she would not owe—she would not owe— certainly wouldn't owe for any money she accumulated after the divorce. That's correct, Your Honor. But now, as I understand it, if you get this debt, total debt, to the bank, non-dischargeable, she will owe you that money from sources that you may get from income she gets later. You'd have a claim against it. I believe that's true, Your Honor. That's not right or fair in my view, or at least it hasn't been explained that to me. Well, Your Honor, I think that's simply— It's not legal, I mean. I think that's simply a creature of the bankruptcy code because if you're the holder of a community claim, you are a creditor of her bankruptcy estate, and as the district court found— Well, I mean, I'm not—you know, who's denying that? Nobody's denying that. Well, but the district court— Let me advance your argument. Yes, sir, but what the district court held, and I agree, is that standing to object to a Chapter 7 discharge is limited only to trustees, creditors, and the United States trustee. As a creditor, we had standing to object to— I'm talking about the bank and not any other creditors. Okay, go ahead. Yes, sir, we were the only creditor that objected. Okay. But we had standing to object as the holder of a community claim as that term is defined by the bankruptcy code. You haven't made me know it yet. I understand, sir, but that's what 10110C of the bankruptcy code says. We have a right to object to her discharge. It doesn't say—well, it doesn't—one of the bankruptcy code says that you have cited doesn't settle the argument that you and I are having now. I understand, Your Honor, and again, I think what— I would direct the court's attention to Judge McGarrity's law review article, which I cited in our briefing, where she makes that statement very clearly that if you are a holder of a community claim, you have a right to object even though that other person is not personally liable to you, and that is our position. Let me ask you a question. Under Texas law, is property presumed to be community property? Yes. So you have to prove that it's your sole property or your separate property. That's correct, and it has to be by clear and convincing evidence, Your Honor. All right. My second question is that you want us to affirm the summary judgment. That's correct. The judge entered an order granting the summary judgment saying he was granting for the reasons set forth in the record. Yes, Your Honor. Where are the reasons in the record? Well, Your Honor, the reasons in the record— obviously his order simply says the bankruptcy court's order for the summary judgment is limited. It says it's granted under 727A3. He doesn't articulate reasons. You'd have to go back to the briefing to see what was in front of him for justification for that. Isn't that what he meant by the record, the pleadings that had been filed? Well, it was the summary judgment motion itself, Your Honor, and all the evidence that was attached to that as well as Mr. Busher's response to that. Deposition or whatever. They were all in the record, Your Honor. And then, of course, Mr. Busher attempted to supplement the record with his motion for reconsideration, but none of those documents were authenticated. All right. Now tell me once again, how are you in a better position to collect from her by making her non-dischargeable than you would be otherwise? Well, Your Honor, you simply have joint and several liability against two parties, so obviously you're in a better position than you would be otherwise. So, yes— No, no, no, because you've got that now. You've got joint and several liability against her on the basis of the community property. You have a right to come against all of her community property. You've got joint and several liability with respect to that now. But isn't that joint and several in rem that Judge Johnson is talking about not in personam? That's correct. Which is what you and the bankruptcy code talk about. That's correct, Your Honor. Now the— I don't understand that. Where is the in rem? What is this now? Against the community property rather than against her personally. I think the problem— But you don't have any right to come against her personally. Well, Your Honor, she did not disclose in her schedules that she owned any separate property. She did not disclose in her schedules that she had any sole management community property. All of the property that's listed in the schedules and in the Statement of Financial Affairs was listed as jointly managed property. She also listed First United's debt as a joint debt. But you don't have the right to do that under the section in which you are asking for non-dischargeable. It says a creditor may ask for non-dischargeability. Yes, sir. You are not her creditor. Yes, sir, we are. And the reason we are is because of the definition of a community claim under the bankruptcy code. As a result, as the holder of a community claim, we are a creditor of her bankruptcy estate. And she had judicially admitted the joint nature of the debt in her own schedules. And she can't get away from that judicial admission because she never amended her schedules. Well, I mean, so? Well, she's admitted the debt, Your Honor. Well, with respect to her community property, I mean, I guess she didn't have any choice. Well, but she didn't do it as to community property. She admitted judicially that the debt was joint. That's what her schedules say. It is. So as a result, we are her creditor either under the definition of a community claim or under the admissions that she makes in her schedules. Is the property the same in Mr.'s bankruptcy as well as Mrs.'s bankruptcy? They are identical, Your Honor. So it's the same property, just two bankruptcies. Well, there's only one. There's a joint petition. So technically, because there wasn't an order of consolidation, you have two estates. But you have a single set of schedules and a single set of statement of financial affairs. And so they are joint debtors under those documents. So as a result, it was never bifurcated. Well, excuse me, the estates are bifurcated. They were never consolidated. But as a result of their schedules and statement of financial affairs, the admissions are, it's all joint obligations. So as a result, under the definitions under the Bankruptcy Code, we are her creditor and we do have a right to object, and the District Court and the Bankruptcy Court so found. Now, with regard to our other arguments, Your Honor, we also argued against Mrs. Busher under 727.82, which is concealment. I believe there have already been questions from the panel about the property that was concealed. In addition to all of the lack of deposit information on the property that was sold that I've told the court about, that was all concealed from us, as well as the property that was found at the storage warehouse. And on cross-examination at trial, Mrs. Busher admitted that some of that property was, in fact, hers. In fact, there were even photographs introduced into evidence at that trial that showed that property in her home. So the argument that it was not their property is simply inaccurate because we not only had photographs of it in their home, but she ultimately admitted on cross-examination that it was hers. So under 727.82, she did secrete property. The final thing that the court found was that she filed a false oath. She knew about the errors in her schedule. She signed them under oath. She signed a declaration that they were true and correct, and ultimately we know that they were not true and correct, and she ultimately admitted on the witness stand that they were not true and correct. We also had in evidence numerous e-mails to her attorney asking that they be corrected because they were not correct, and she never saw to it that they were ever amended. That's all I have, Your Honor. Okay. Thank you, Mr. Board. Thank you, Your Honor. Sir, thank you. We're going to take about 15 minutes. Mr. Mayne. Oh, I'm sorry. Excuse me, Mr. Mayne. Given Your Honor's questions on Mrs. Boucher, I believe the court has that well in hand and can weigh those issues. I would like to address on behalf of Mr. Boucher the suggestion by opposing counsel that the judgment of the bankruptcy court on the summary judgment can be affirmed or they can still win under something other than 727A3, which is what the bankruptcy court found, because this is a de novo review. First United did not appeal. They only filed an appellant's brief. They are not appealing from the judgment, and they are asking the court to weigh the credibility of the witnesses and to weigh, even though it was a summary judgment, that still applies. I don't believe that it is proper to affirm the granting of the summary judgment, which was made final at the end of the trial, on any ground other than 727A3. Okay. Thank you, Mr. Mayne.